RECEIVED
2008 MAR 27 P 12: 17

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Dr. Larry Camp and Sabrina Martindale, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| Correctional Medical Services, Inc., Richard F. Allen, individually and in his official capacity as Commissioner of Alabama Department of Corrections, Ruth Naglich, in her official and individual capacities, and Laura Ferrell, in her official and individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 2:08CV227-CSC

**Jury Trial Demanded**

## COMPLAINT

Plaintiffs Dr. Larry Camp and Sabrina Martindale hereby file this Complaint seeking declaratory, injunctive, and other relief against Correctional Medical Services, Inc., Alabama Department of Corrections Commissioner Richard F. Allen, in his official and individual capacities, Associate Commissioner Ruth Naglich, in her official and individual capacities, and Medical Systems Administrator Laura Ferrell, in her official and individual capacities. In support thereof, Plaintiffs state the following:

## THE PARTIES

1.  Plaintiff Dr. Larry Camp is over the age of 19 years and is a citizen of the United States and the State of Alabama. Dr. Camp is a retired United States Army Colonel and is a dentist licensed to practice in the State of Alabama.

2.  Plaintiff Sabrina Martindale is over the age of 19 years and is a citizen of the United States and the State of Alabama. Ms. Martindale is a dental assistant.

3.  Defendant Correctional Medical Services, Inc. ("CMS") is a corporation registered to do business in the State of Alabama. Alabama Secretary of State records reflect that CMS maintains a business address at 60 Commerce Street, Montgomery, Alabama 36103 and may be served through its registered agent, National Registered Agents, Inc., which is located at 150 South Perry Street, Montgomery, Alabama 36104.

4.  Defendant Richard F. Allen, who is over the age of 19 years, is the Commissioner for the Alabama Department of Corrections. Allen is a citizen of Alabama who works and/or resides within the jurisdiction of this Court. Allen may be served at 301 S. Ripley Street, Montgomery, Alabama 36130.

5.  Defendant Ruth Naglich, who is over the age of 19 years, is the Associate Commissioner of Health Services for the Alabama Department of Corrections. Naglich is a citizen of Alabama who works and/or resides within the

jurisdiction of this Court. Naglich may be served at 301 S. Ripley Street, Montgomery, Alabama 36130.

6. Defendant Laura Ferrell, who is over the age of 19 years, is the Medical Systems Administrator and special projects manager for the Alabama Department of Corrections. Ferrell is a citizen of Alabama who works and/or resides within the jurisdiction of this Court. Ferrell may be served at 301 S. Ripley Street, Montgomery, Alabama 36130.

## JURISDICTION AND VENUE

7. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. This lawsuit arises under the Constitution and laws of the United States, particularly the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983 and 1988. This Court has supplemental and pendant jurisdiction over Plaintiffs' state law claims.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to the claims set forth in this Complaint occurred in this District and Division.

## FACTS

9. The Alabama Department of Corrections ("ADOC") is responsible for confining, managing, and providing rehabilitative programs for convicted felons in

a safe, secure and humane environment, utilizing professionals who are committed to public safety and to the positive re-entry of offenders into society.

10. The ADOC has delegated its responsibilities relating to the mental and dental care of Alabama prisoners to third-party contractors, including CMS.

11. Pursuant to a ADOC contract effective November 1, 2007, CMS is responsible for providing medical and dental services to prisoners assigned to Alabama State prisons. The services provided by CMS on behalf of the ADOC, pursuant to its three-year, 228 million dollar contract with the ADOC, are funded by Alabama taxpayers. As a result of the contract, CMS have a close and symbiotic relationship. CMS is also performing a State public function in that it provides medical and dental care on behalf of the State to incarcerated inmates who are wards of the State.

12. Prison Health Services ("PHS") previously provided medical and dental services to prisoners assigned to Alabama State prisons pursuant to a contract entered into between PHS and the ADOC. This contract was effective between November 1, 2003 and October 31, 2007.

13. Pursuant to the ADOC's contract with PHS, Dr. Camp and Ms. Martindale worked at Limestone Correctional Facility ("Limestone"), an Alabama prison located in Harvest, Alabama.

14. Dr. Camp worked as a staff dentist at Limestone and Ms. Martindale worked as a dental assistant at Limestone. During their employment at Limestone, Dr. Camp and Ms. Martindale provided exemplary dental services to the prisoner-patients.

15. During their employment at Limestone, Dr. Camp and Ms. Martindale witnessed their supervisor, Dr. Mike West, PHS's Director of Dental Services for all prisons within the Alabama Corrections system, engage in improper conduct. This conduct included the: delivery of unnecessarily brutal and painful dentistry on the prisoner-patients, reuse of unsterilized equipment on prisoner-patients, and arbitrary denial of basic dental equipment and supplies.

16. Dr. Camp reported Dr. West's misconduct to PHS's Regional Medical Director in December 2003. That same week, Dr. Camp filed a complaint against Dr. West with the Board of Dental Examiners of Alabama ("Dental Board"). PHS discharged Dr. Camp less than one month after he complained to PHS and the Dental Board about Dr. West's improper conduct and mistreatment of prisoners.

17. Ms. Martindale filed a complaint with the Dental Board in January 2004 and testified on behalf of the Dental Board against Dr. West. Ms. Martindale was discharged by PHS shortly after testifying against Dr. West.

18. The Dental Board ultimately sanctioned Dr. West on May 5, 2005 for his misconduct at Limestone after finding that he failed "to comply with the current recommendations of the Centers for Disease Control and Prevention's Recommended Infection-Control Practices for Dentistry".

19. Laura Ferrell was PHS's Regional Vice-President during Dr. Camp's and Ms. Martindale's employment at Limestone. In her capacity as Regional Vice-President, Ferrell supervised Dr. West as well as Dr. Camp and Ms. Martindale.

20. Ferrell had direct knowledge of the complaints brought by Dr. Camp and Ms. Martindale against Dr. West. In fact, she testified on Dr. West's behalf before the Dental Board.

21. Ferrell recommended, authorized, and/or otherwise approved of the decision to discharge Dr. Camp and Ms. Martindale from PHS after their participation in the Board's investigation of Dr. West.

22. In or around September 2007, the ADOC announced that it would not renew PHS's service contract and that it would be entering into a three-year medical services contract with CMS valued at over $223 million.

23. Alabama's Legislative Contract Review Committee initially delayed implementation of the contract after it received reports that another contractor had bid between $6-9 million less than CMS and learned that several ADOC officials

who had reviewed the contracts had previously worked for CMS. Alabama's Legislative Contract Review Committee does not have the power to cancel contracts and, despite their concerns, the contract became effective November 1, 2007.

24. In or around late September 2007, Dr. Camp submitted an application packet to the Dental Recruiter for CMS for the staff dentist position at Limestone.

25. Dr. Camp interviewed with Dr. King for the staff dentist position at Limestone on or about October 12, 2007.

26. Several days later, Dr. Camp called Dr. King to inquire into the status of his application and was told that the ADOC had to approve everyone before a contract could be offered to him by CMS. Dr. King indicated that this was a mere formality and that he had approved his hire.

27. Approximately one week after his interview at Limestone, Dr. Camp was informed by CMS that the ADOC had denied his application for employment at Limestone. No reason was given for the decision and CMS indicated that the decision was beyond its control.

28. Over the next few months, Dr. Camp repeatedly attempted to contact Naglich, who is responsible for the administration of medical services to all

Alabama prisoners, to learn the reason(s) why his employment application was denied. Naglich failed to return any of his phone calls.

29. Dr. Camp contacted Allen on or about January 3, 2008. Dr. Camp explained the situation to Allen and stated that he had repeatedly attempted to speak with Naglich to no avail. Allen assured Dr. Camp that he would have Naglich contact him regarding the employment decision. Despite Allen's assurances, Naglich failed to do so.

30. Ms. Martindale applied for employment at Limestone and was interviewed at Limestone in October 2007. At the end of the interview, Debbie Hunt, Health Services Administrator for CMS, hired Ms. Martindale for the dental assistant position. Ms. Martindale was informed that her hourly rate of pay would be $15 per hour and that she would start once Dr. Camp started treating prisoner-patients at Limestone. As a result of these representations, Ms. Martindale ceased looking for employment and prepared to start work at Limestone.

31. Approximately one week after being hired, Ms. Martindale contacted Limestone to find out when she and Dr. Camp would be starting. Ms. Martindale was told that neither she or Dr. Camp were going to be allowed to work at Limestone and that CMS employees were told not to ask any questions.

32. Ms. Martindale was also told that one or more employees from CMS had complained to ADOC officials that they would not work with her and/or Dr. Camp because they had complained about Dr. West and/or were "whistleblowers" and/or "troublemakers".

33. CMS employees were aware that Dr. Camp and Ms. Martindale had previously complained about Dr. West's mistreatment of prisoners, however, when informed by ADOC that Dr. Camp and Ms. Martindale would not be hired and were told not to ask questions, CMS failed to investigate.

## First Cause of Action:

## 28 U.S.C. § 1983 - Violation of Constitutional Rights

34. Plaintiffs hereby allege and incorporate by reference paragraphs 1-33 as if set forth fully herein.

35. Defendants, which have a close and symbiotic relationship, have, through the aforesaid acts, unlawfully retaliated against Plaintiffs for engaging in speech on matters of public concern, including the mistreatment of prisoners, in violation of the First and Fourteenth Amendments.

36. Defendants have acted in violation of clearly established law and in a manner that no competent and responsible agent of the State would believe was lawful.

37. Dr. Camp's and Ms. Martindale's speech played a substantial role in Defendants' decision to deny them employment at Limestone.

38. Upon information and belief, Defendants' acts were intentional, malicious, reckless, and willful.

39. Plaintiffs have suffered damages, including a loss of property, as a direct and proximate result of Defendants' malicious, intentional, and wrongful conduct.

40. Plaintiffs are entitled to recover compensatory and punitive damages, in an amount to be determined by the trier of fact, as a result of the aforementioned unlawful conduct.

41. Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to recover from Defendants the costs of this action, including reasonable attorneys fees.

## Second Cause of Action:

## Tortious Interference with Business and Employment Relations

42. Plaintiffs hereby allege and incorporate by reference paragraphs 1-33 as if set forth fully herein.

43. As evidenced by the allegations set forth above, Defendants Allen, Ferrell, Naglich, in their individual capacities, willfully, tortiously and maliciously interfered with the business relationships of Plaintiffs, including, but not limited to,

their prospective employment relationships and employment relationships with CMS.

44. Defendants Allen, Ferrell, and Naglich had knowledge of the relationships between Plaintiffs and CMS and intentionally, willfully, and maliciously interfered in said relationship without cause or justification.

45. Defendants Allen, Ferrell, and Naglich acts caused Plaintiffs to lose employment with CMS at Limestone and resulted in financial losses to Plaintiffs.

46. As a direct and proximate result of said action by Defendants Allen, Ferrell, and Naglich, Plaintiffs have suffered damages in an amount to be proven at trial.

## Third Cause of Action:

## Fraud Against CMS

47. Plaintiffs hereby allege and incorporate by reference paragraphs 1-33 as if set forth fully herein.

48. Defendant CMS made false representations to Ms. Martindale that it knew were false when made, or recklessly made representations without regard to their truth or falsity, regarding their decision to hire her at Limestone as a dental assistant at an hourly rate of $15 per hour following her interview at Limestone.

49. Defendant CMS's misrepresentations involved one or more material facts.

50. Ms. Martindale reasonably relied on the misrepresentations by CMS to her detriment.

51. Ms. Martindale was damaged as a result of her reliance on the fraudulent representations of Defendant CMS.

## Fourth Cause of Action:

## Civil Conspiracy

52. Plaintiffs hereby allege and incorporate by reference paragraphs 1-33 as if set forth fully herein.

53. Defendant CMS and Defendants Allen, Ferrell, and/or Naglich agreed to and did conspire together to engage in tortious conduct against Plaintiffs and to violate the rights of Plaintiffs as a result of Plaintiffs' decisions to complain about Dr. West's inhumane treatment of prisoners assigned to Limestone.

54. Plaintiffs have suffered damages as a direct and proximate result of the conspiracy between and among Defendants in an amount to be determined by the trier of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray as follows:

a.  That Plaintiffs be awarded compensatory damages, including front pay and back pay, and punitive damages from Defendant CMS;

b.  That Plaintiffs be awarded compensatory damages, including front pay and back pay, and punitive damages from Defendants Allen, Ferrell, and Naglich, in their individual and/or official capacities;

c.  That the Court declare that Defendants' failure to hire Plaintiffs violate Plaintiffs' rights under the First and Fourteenth Amendments of the Constitution of the United States of America;

d.  That the Court enjoin Defendants from the continuation of such unlawful acts;

e.  That Plaintiffs recover their attorney fees and costs incurred in bringing this action from Defendants; and

f.  For all such other and further relief as is deemed just and proper by this Court.

Submitted this 27th day of March, 2008.

*Lindsey Edelmann*
David Long-Daniels
Alabama Bar No. LON024
Email: long-danielsd@gtlaw.com
Lindsey Edelmann
Alabama Bar No. ASB-1727-E53E
Email: edelmannl@gtlaw.com
**GREENBERG TRAURIG, LLP**
The Forum, Suite 400
3290 Northside Parkway, NW
Atlanta, Georgia 30327
(678) 553-2247

*Counsel for Plaintiffs Dr. Camp and Ms. Martindale*

## PLAINTIFFS DEMAND A TRIAL BY A JURY OF THEIR PEERS

*Lindsey Edelmann*
Lindsey Edelmann

*Counsel for Plaintiffs Dr. Camp and Ms. Martindale*

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004453
Cashier ID: khaynes
Transaction Date: 03/27/2008
Payer Name: GREENBERG TRAURIG
------------------------------------
CIVIL FILING FEE
 For: GREENBERG TRAURIG
 Case/Party: D-ALM-2-08-CV-000227-001
 Amount:         $350.00
------------------------------------
CHECK
 Check/Money Order Num: 013849
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:       $0.00

CAMP ET AL V. CORRECTONAL MEDICAL
SERVICES ET AL
```